KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Telephone: (914) 401-9500
Erica R. Aisner, Esq.
eaisner@kacllp.com

Hearing Date: July 30, 2024
Hearing Time: 2:00 p.m. (EST)

Objection Deadline: July 23, 2024
at 5:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                                              :
                                                                                        :
LAWRENCE A. FIRST,                                              :         Chapter 11
                                                                                        :         Case No. 22-11020 (MG)
                                        Debtor.                          :
------------------------------------------------------------x

**DEBTOR'S AMENDED MOTION FOR AN ORDER PURSUANT TO FED. R. BANKR. P. 9019 APPROVING THE AGREEMENT AND SETTLING AND RESOLVING ALL CLAIMS AND CONTROVERSIES BY AND BETWEEN (I) (A) DEBTOR LAWRENCE A. FIRST, (B) MARIE IAMUNNO, DEBTOR'S NON-DEBTOR SPOUSE, AND (II) THE ASCRIBE ENTITIES**

**TO:     THE HONORABLE MARTIN GLENN,
             CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Lawrence A. First, the above-captioned debtor and debtor in possession (the "Debtor" or "Larry"), by and through his counsel, Kirby Aisner & Curley LLP, as and for his motion (the "Motion") for an order, pursuant to Fed. R. Bankr. P. 9019, approving a certain stipulation (the "Stipulation") by and between (A) (i) the Debtor, and (ii) Marie Iamunno, Larry's non-debtor spouse ("Marie"), and (B) ASCP, LLC, Ascribe Associates II, LLC, Ascribe Associates III, LLC, Ascribe Opportunities Fund II, L.P., Ascribe Opportunities Fund III, L.P., Ascribe Opportunities Fund II (B), L.P., Ascribe Opportunities Fund III (B), L.P., Ascribe II Alternative Investments, L.P., Ascribe III Alternative Investments, L.P., Ascribe Management LLC, American Securities LLC, Ascribe Capital LLC, and American Securities Opportunities Advisors, LLC, or their affiliated individuals or entities (collectively, "Ascribe") (parties to the Stipulation are collectively

referred to herein as the "Parties," each a "Party"), a copy of which is annexed hereto as <u>Exhibit A</u>, respectfully sets forth as follows:

## PRELIMINARY STATEMENT

Prior to filing this bankruptcy case, ASCP, LLC obtained a judgment against Larry in the amount of $4,726,830.29 in connection with a loan made by ASCP, LLC to Larry. Larry filed this bankruptcy case so that he could pursue affirmative alleged claims against Ascribe and reorganize his financial affairs. Unfortunately for Larry, on July 20, 2023, an arbitration tribunal entered an award dismissing all of Larry's claims against Ascribe with prejudice, and awarding Ascribe Associates III, LLC an award against Larry in the amount of $11,204,331.00, plus interest. In addition to Ascribe's claims against Larry and his bankruptcy estate, Ascribe asserts that Larry's bankruptcy estate has claims against Larry's non-debtor spouse Marie and the couples' adult children on account of transfers of money or other property made by Larry.

Since September 2023, the Parties have had extensive negotiations in good faith to resolve all issues between them. The agreement emanating from those extensive negotiations is embodied in the Stipulation and provides for, among other things, a payment of $5,411,212.56 to Ascribe, approximately $1.65 million of which will come from the Debtor with the remaining amount from Marie. The Stipulation further provides for the dismissal of the Debtor's case without any discharge, and significant protections in the form of confessions of judgment by Larry and Marie in Ascribe's favor, which may be entered if Larry or Marie made a material misrepresentation with respect to their financial affairs.

For all the reasons set forth below, the Debtor respectfully submits that the settlement embodied in the Stipulation was negotiated in good faith by the Parties over many months following an exhaustive investigation of Larry and Marie's financial affairs, and that approval of

2

the Stipulation is in the best interests of the Debtor's estate and creditors. Accordingly, the Debtor respectfully requests that the Stipulation be approved and that the Parties be authorized to consummate its terms.

## INTRODUCTION

1. On July 27, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Since the Petition Date, the Debtor has remained in possession of his property pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. To date, no trustee, official committee of unsecured creditors, or examiner, has been appointed in the Debtor's case.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.

5. Venue of the case in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicate for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A. The Debtor's Personal Background

7. Larry is a 62-year-old attorney who practiced law at Fried, Frank, Harris Shriver & Jacobson LLP until 2002 when he transitioned into the investment world as an investment manager specializing in distressed markets.

8. In the fall of 2016, Larry was diagnosed with Parkinson's disease, which he has been able to successfully manage to date through the implementation of a very aggressive daily

3

physical activity protocol and medications. Larry and Marie have been married for over thirty-four years and have four adult children.

9. Now, Larry does not actively practice law or work in the investment business. Larry is currently employed as a fulltime instructional paraeducator in math at an elementary school in the State of Connecticut.

**B. The Ascribe Pre-Petition Judgment**

10. Larry joined Ascribe in July 2008 after working at Merrill Lynch for six years. Larry managed various investment funds for Ascribe.

11. For many years the funds that Larry managed for Ascribe were successful and Larry enjoyed a substantial income as a result. Unfortunately, there was a significant downturn in the markets in which the funds were heavily invested, including the energy markets which were hit very hard during the pandemic. This downturn triggered claw-backs that Larry could not satisfy due to his financial condition.

12. On or around March 30, 2022, the New York State Supreme Court entered a judgment against Larry and in favor of ASCP, LLC in the amount of $4,726,830.29.

13. Larry filed his bankruptcy case around four months after entry of the award in order to stay Ascribe's collection efforts and reorganize his financial affairs in a transparent and organized bankruptcy proceeding.

**C. Litigation in this Bankruptcy Case**

14. Ascribe has been very active in this bankruptcy case and has, among other things: (i) sought and obtained significant discovery from Larry, Marie, and their adult children [*See* Docket Nos. 23, 26, 27, 31, 82, 84, 85 and 86]; (ii) moved to dismiss the Debtor's case [*See* Docket Nos. 33, 46 and 48, Decision at Docket No. 50]; (iii) commenced an adversary proceeding against Larry objecting to the dischargeability of Ascribe's claims [*See* Docket No. 35]; and (iv) filed a

motion for authority to pursue alleged estate claims against Marie [*See* Docket No. 83].

15. On September 15, 2022, this Court "So Ordered" a stipulation between Larry and Ascribe granting relief from the automatic stay to continue to pursue unresolved claims against each other [Docket No. 25].

16. On July 21, 2023, following a four-day hearing, an AAA tribunal issued a final award directing Larry to pay Ascribe III GP, the principal sum of $11,204,331 plus interest. Shortly thereafter, the Parties began discussing settlement in earnest.

## THE STIPULATION

17. The Stipulation was negotiated over several months and after the production, review, and analysis of thousands of pages of documents produced by Larry and Marie. The Stipulation is a result of good faith and arms' length negotiations between the Parties seeking to settle and resolve all issues and disputes that may exist by and among the Parties, according to the terms set forth in the Stipulation. By way of summary, the Stipulation between the Parties provides for the following[1]:

- **Settlement Payments and Delivery**. The Parties have agreed to settle and resolve all claims which have been or may be asserted against Larry, Marie, or their adult children by Ascribe or the Estate in exchange for payments totaling $5,411,212.56 (the "Settlement Amount") paid to ASCP LLC, which will be paid within two (2) business days of the entry of a written order approving the Stipulation (an "Approval Order") and that order becoming a final order (a "Final Order"). The Settlement Amount will be paid from Larry's non-exempt cash assets with the remainder from Marie.

- **Conditions Precedent**. The terms of the Stipulation become effective (the "Effective Date") upon satisfaction of the following conditions: (a) execution by the Parties of the Stipulation; (b) entry of the Approval Order and the Approval Order becoming a Final Order, which shall be deemed to occur immediately upon the expiration of the applicable period from which to appeal the Approval Order; and (c) the payment of the Settlement Amount.

---

[1] For ease of reference, the Debtor has included a summary of the terms of the Stipulation here. Parties are encouraged to review the Stipulation in its entirety and not rely on the summary set forth herein. To the extent there is any express or implied conflict between the terms of the Stipulation and the description contained herein, the terms of the Stipulation shall control.

5

- **Surrender of Fund Interests**. Upon the Effective Date, Larry will be deemed to have no interest in any entities affiliated with Ascribe Capital LLC and/or American Securities LLC, including being deemed to have surrendered any and all interests in any of the following Ascribe funds: Ascribe Associates II, LLC, Ascribe Associates III, LLC, and Ascribe Opportunities Fund III (B), L.P.

- **Dismissal of Larry's Bankruptcy Case**. Larry's bankruptcy case shall be dismissed prior to the entry of any discharge following the Effective Date, and the Bankruptcy Court's hearing and ruling upon any applications for the allowance of professional fees, the applications for which shall be filed not later than ten (10) business days following entry of the Approval Order.

- **Representations and Warranties**. Larry represents and warrants that the disclosure of his assets, liabilities, and financial affairs made in the sworn statements in his bankruptcy case are true and accurate, that all representations made to Ascribe and the Bankruptcy Court with respect to this case do not contain any untrue statements of material fact nor omit to state a material fact necessary to make the representations made not misleading to Ascribe, and that there are no material changes to the testimony set forth in his bankruptcy schedules and statement of financial affairs annexed to the Stipulation as Exhibit "A" and filed at Dkt. No. 14, except for the elimination of the claim against Ascribe through arbitration or as reflected in the sworn monthly operating statements filed with the Court (collectively, the "Larry Representations"). Marie represents and warrants that she has provided a full and accurate disclosure of all of her material assets as set forth on Exhibit "B" to the Stipulation[2], that she does not have any additional material assets, and that all representations made to Ascribe and the Bankruptcy Court with respect to this case do not contain any untrue statements of material fact nor omit to state a material fact necessary to make the representations made not misleading to Ascribe (collectively, the "Marie Representations"). Larry and Marie represent that, since January 1, 2016, other than (i) the transfers evidenced or reflected by the financial account or other statements or any other documents that have been produced to Ascribe in Larry's bankruptcy case or as otherwise set forth on Exhibit "C" to the Stipulation, or (ii) such other transfers in the amount not to exceed $150,000 in the aggregate, neither of them have transferred or caused to be transferred any material assets to any of their offspring (or any trust or entity affiliated with Larry, Marie or their offspring). Both Larry and Marie represent that there are no trusts for the benefit of Larry, Marie and/or their offspring and that they have created no entities owned in whole or in part by Larry, Marie and/or their offspring.

---

[2] Exhibit B is an integral part of the Stipulation, but it is agreed that it will not be filed with the Court or circulated to creditors generally in connection with the motion for approval of this Stipulation. While Exhibit B was required by Ascribe as a condition to entry into this Stipulation, representations regarding Marie's assets are akin to post-judgment discovery against a litigation target and not material to whether approval of the Stipulation is in the best interests of the estate and creditors. To the extent that it is required by the Court, a motion to seal will be filed or it will be submitted as an evidentiary exhibit at the hearing on approval of the Stipulation.

- **Judgments**. Upon dismissal of the Chapter 11 case, Ascribe will promptly issue a satisfaction of its judgment entered by the court in *ASCP, LLC v. Lawrence First*, Index No. 656351/2021 (N.Y.S. Sup. Ct.) (the "Prepetition Judgment") and will take whatever steps are necessary to record such satisfaction in any applicable jurisdictions where the Prepetition Judgment was recorded or enforced. Larry will execute a confession of judgment in Ascribe's favor in the amount of $12,218,785.74, the amount of Ascribe's Prepetition Judgment and Final Arbitration Award less the Settlement Payment, in the form annexed to the Stipulation as Exhibit "D" (the "Larry Judgment"), which Ascribe's counsel will hold in escrow subject to the terms of the Stipulation. Marie will execute a confession of judgment in Ascribe's favor in an unliquidated amount that shall be equal to either (i) $250,000 plus the amount of any Marie Misrepresentation (as defined below)[3], or (ii) $4,420,000[4] in the event that any Marie Misrepresentation is deemed willful and intentional in the form annexed to the Stipulation as Exhibit "E" (the "Marie Judgment") which Ascribe's counsel will hold in escrow subject to the terms of the Stipulation. The Larry Judgment and Marie Judgment shall be held for a period of five (5) years from the entry of the Approval Order, after which time they will be null and void if they have not been released from escrow pursuant to the terms of the Stipulation.

- **Release of the Firsts**. Upon the Effective Date, each entity defined collectively as Ascribe, together with any parent, owners or subsidiaries, affiliated funds, persons or companies, or any other funds or companies under common control (collectively, the "Ascribe Releasors"), shall be deemed to have waived, set aside, discharged, settled, compromised, and released any and all claims (to be interpreted in the broadest manner possible), causes of action, rights and remedies each has, had or may have against Larry, Marie, and each of their adult children, Alexander First, Allison First, Emily First, and Marlene First (collectively, the "Firsts"). Further, upon the Effective Date, Larry and the Estate shall be deemed to have released Marie and each of the other Firsts from any claims, rights, or causes of action under Chapter 5 of the Bankruptcy Code, N.Y. Debtor & Creditor Law §§ 271, *et. seq.*, as well as any equivalent laws in any other state or jurisdiction. The payment of the Settlement Amount is in full and final settlement of any and all claims that the Ascribe Releasors and the Estate may assert against any of the Firsts including the Larry Judgment and Marie Judgment.

- **Remedy in the Event of Misrepresentations**. Notwithstanding the foregoing release, in the event that any of the Larry Representations turn out to be materially untrue (a "Larry Misrepresentation"), Ascribe shall be entitled to enter and enforce the Larry Judgment against Larry in accordance with applicable State and Federal law. To the extent that any of the Marie Representations turn out to be materially untrue (a "Marie Misrepresentation"), Ascribe shall be entitled to enter and enforce the Larry Judgment against Larry and the Marie Judgment against Marie in accordance with applicable

---

[3] The amount of any Marie Misrepresentation is equal to the value of any material asset that Marie failed to disclose or the value of any undisclosed transfer of any material asset to her adult children, but only to the extent that such failure constituted a breach under the agreement.

[4] The amount is the proceeds of the townhouse sale allocated to Marie less the approximate amount contributed by Marie towards the Settlement Amount.

7

State and Federal law. In the event that the Marie Misrepresentation is deemed to be willful and intentional, Ascribe shall be entitled to enter the Marie Judgment in the higher amount as set forth in Paragraph 8(ii) of the Stipulation. In the event of a Marie Misrepresentation and release from escrow of both the Larry Judgment and Marie Judgment to Ascribe, the collective amount that may be collected from Larry and/or Marie shall not exceed the amount of $12,218,785.74.

➢ **Acting Upon an Alleged Misrepresentation**. In the event Ascribe believes that a Larry Misrepresentation or Marie Representations has occurred, it must provide the party accused of making the Misrepresentation of the Misrepresentation written notice identifying the substance and basis for the accusation, and its intent to act upon it (the "Misrepresentation Notice"). If the party accused of making the Misrepresentation wishes to dispute it, he/she must file a motion to reopen Larry's bankruptcy case for the purpose of commencing a declaratory judgment action in the Bankruptcy Court, to determine the existence of the alleged Misrepresentation (a "Misrepresentation Challenge") by no later than the 10th business day following receipt of the Misrepresentation Notice (the "Challenge Deadline"). If no Misrepresentation Challenge is made prior to expiration of the Challenge Deadline, the Misrepresentation will be deemed to have been made and Ascribe shall be entitled to release the Larry Judgment and/or the Marie Judgment from escrow and proceed accordingly. No statutory limitations period shorter than five (5) years from the payment of the Settlement Amount nor any defense sounding in laches shall apply to a Misrepresentation Challenge. The Bankruptcy Court shall retain jurisdiction for the purpose of determining any timely made Misrepresentation Challenge or to interpret the terms of this Stipulation, and such retention shall be set forth in the order dismissing Larry's bankruptcy case.

➢ **Release of Ascribe**. Upon the Effective Date, Larry and Marie shall be deemed to have waived, set aside, discharged, settled, compromised, and released any and all claims (to be interpreted in the broadest manner possible), causes of action, rights and remedies each has, had or may have against each of the Ascribe Releasors, except to the extent that by virtue of Larry's past membership on any boards of Ascribe and of its affiliates and portfolio companies, and his employment with Ascribe, he will remain entitled to indemnification to the fullest extent of the law pursuant to all applicable certificates of incorporation or organization, bylaws, company agreements, and policies, and to at least the fullest extent that indemnification is available to other current and former board members and their equivalent, in the case of an entity that does not have a board). Ascribe agrees to maintain reasonable and adequate coverage for Larry under its directors & officers liability insurance and other insurance policies to at least the fullest extent that coverage is maintained for other current and former executives and board members of the firm and/or others acting in an equivalent capacity (in the case of an entity that does not have a board).

## RELIEF REQUESTED

18. By this Motion, the Debtor seeks this Court's approval of the Stipulation, and asserts that the terms, conditions, and compromises contained therein are fair and reasonable under the circumstances, and that approval of the Stipulation is in the best interest of the estate and its creditors.

19. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968); Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103 (Bankr. S.D.N.Y. 1993).

20. In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

21. To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co)., 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham

Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re Int'l Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

22. The Court should also consider the fair and reasonable course of action for the debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

23. The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement reaches the threshold of reasonableness. Instead, the Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the best interests of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

24. First, the Debtor (and presumably Ascribe) considered the costs and delays associated with any protracted litigation. The Debtor has been clear in his intention to seek the conversion of his case to one under Chapter 7 if he cannot reach a resolution with Ascribe. That conversion would result in the appointment of an independent trustee, who would then need to conduct his or her own investigation of the alleged avoidance actions and either pursue, resolve, or abandon them. The addition of another party to conduct a significant investigation, or at least seriously consider the results of Ascribe's investigation, would add significant, additional administrative costs to the estate, and would also cause delays to administration.

25. Marie and any other targets of potential avoidance actions would assuredly defend those claims if brought by any Chapter 7 trustee. Marie's assets are limited, and it is highly doubtful that the amount of those assets will ever increase. Marie has not earned an income in decades, and Larry earns only a modest hourly wage as a fulltime instructional paraeducator in math in an elementary school. Thus, every dollar that Marie may spend on her own defense is one less dollar that may be available to satisfy the holder of a hypothetical future judgment. This is a strong incentive to settle while Marie still has assets to settle with. Also, as with any litigation, this litigation could take years to complete.

26. Second, the Debtor (and presumably Ascribe) considered the likelihood of success on the merits. The amount of the Settlement Amount that will be contributed by Marie (at least $3.8 million) far exceeds the value of the claims where Marie thinks that she is at all vulnerable. Marie maintains that any assets she obtained during the course of her marriage to Larry were obtained in the ordinary course, and that those assets were titled in her name, often jointly with Larry, long before Larry's debtor-creditor issues with Ascribe arose. Moreover, Marie has asserted that Larry was solvent during a majority of the theoretical lookback period for attacking transfers. The Debtor believes that there is significant vulnerability on these claims especially when considered in light of the costs and delays attendant with litigation as set forth above.

27. Third, the Debtor considered that his case will be dismissed without the entry of a discharge, and thus, any of his remaining creditors will be able to collect their claims against him following dismissal to the extent that Larry does not voluntarily satisfy them, which is his intention. Only Ascribe is being asked to compromise any portion of its claim, which it is doing voluntarily in the context of the Stipulation. It is highly unlikely, if not impossible, that any

creditor could do better if the Stipulation were not approved and the Debtor converted his case to Chapter 7.

28. Fourth, the Debtor considered the difficulty in assessing the probability of success on certain potential estate claims, especially those that would require complex expert analysis like insolvency. The Debtor's financial affairs are very complex for an individual debtor. Determining the timing of accrual of the Debtor's liabilities to Ascribe, as well as the fair market value of Larry's assets at various fixed points in time, are all very complicated and unpredictable endeavors. Financial condition proofs will require significant and costly expert analysis, the results of which cannot be predicted and may not be favorable to the estate once complete. The settlement avoids the need to conduct any expensive and unpredictable expert analysis.

29. Finally, the Debtor considered the certainty provided for in the Stipulation. Litigation will be costly, lengthy, and risky, with a completely unpredictable result as set forth above. The Stipulation will provide for a meaningful payment to Ascribe, and payment to other creditors with liquidated claims.

30. Based on the foregoing, the Debtor determined that the settlement contemplated by the Stipulation is fair, reasonable and in the best interests of the estate and creditors. Accordingly, the Debtor respectfully requests that this Court approve the Stipulation.

## **NOTICE**

31. Notice of this Motion will be given in accordance with Bankruptcy Rule 2002. The Debtor submits that such notice constitutes good and sufficient notice and that no other or further notice need be given.

## **NO PRIOR REQUEST**

32. No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order, substantially in the form of the proposed order annexed hereto as Exhibit B, and for such other and further relief as the Court determines to be just and proper.

Dated: Scarsdale, New York
July 3, 2024

        KIRBY AISNER & CURLEY LLP
        *Attorneys for the Debtor*
        700 Post Road, Suite 237
        Scarsdale, New York 10583
        Tel: (914) 401-9500
        eaisner@kacllp.com

        By: */s/ Erica R. Aisner*
            Erica R. Aisner, Esq.